[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant Edna E.'s children, Paul, Joseph and Zachary E., to appellee Lucas County Children Services Board.
Appellant sets forth the following assignment of error:
 "The Trial Court's Decision to Grant Lucas County Children Services Board Permanent Custody Is Not Supported by Clear and Convincing Evidence."
The facts that are relevant to the issues raised on appeal are as follows. Appellant is the mother of Paul, born December 21, 1985; Joseph, born November 9, 1988; and Zachary, born July 19, 1994.[1] On June 26, 1995, Lucas County Children Services Board ("LCCS") requested that the trial court grant emergency temporary custody of all three boys to the agency. The request was granted and the following day the agency filed a complaint in dependency and neglect and a motion for a shelter care hearing. In its complaint, the agency alleged that on June 23, 1995, appellant had been found unconscious in her home and hospitalized following an overdose of prescription medication; that after appellant was released from the hospital she was arrested for public intoxication, and the following day arrested for both public intoxication and indecent exposure; that appellant and her husband had a history of alcohol abuse and domestic violence; that Paul and Joseph had a history of behavioral problems and that Paul frequently acts out violently and had been diagnosed as suffering from stress disorder. The shelter care hearing was held that same day and at the conclusion of the hearing LCCS was granted temporary custody of the children pending adjudication.
At a hearing held on August 8, 1995, appellant and her husband consented to a finding that the children were dependent and neglected. On May 14, 1996, LCCS filed a motion for an extension of temporary custody, which the trial court granted, and on November 7, 1996, LCCS filed a motion for permanent custody. A hearing was held on the motion on March 20, 21 and 25, 1997 and the following testimony was heard.
Mary Jay, a chemical dependency counselor with Compass, testified as to her contact with appellant beginning September 1996, and continuing twice weekly until January 30, 1997, when appellant was successfully discharged from the program. Jay stated that during the program appellant dealt with the issues of relapse prevention, acceptance of her disease and sober living. Jay testified that appellant had a sponsor for support, with whom she had frequent contact. She testified further that her only contact with appellant since appellant's discharge from the program was on one occasion when appellant called to inquire about the possibility of submitting voluntary urine screens in the future. Jay stated that as far as she knew appellant had acknowledged that she had to stay away from "using places" and "using people" in order to stay sober. Jay further testified that appellant told her she had suffered a relapse in July 1996, before she started Jay's program. She stated that appellant was aware that her alcohol abuse affected her ability to parent. Jay testified that she believed appellant could remain sober as long as she maintained contact with her support system and continued with counseling.
Judi Rogers, one of appellant's caseworkers at LCCS, testified as to her contact with appellant from June through November 1996. Rogers stated that she was brought into the case because of her background in substance abuse issues, with the goal of guiding appellant into treatment and recovery. Rogers met with appellant for the first time immediately after appellant's relapse in July 1996. Rogers stated that, to her knowledge, it was appellant's second relapse. She testified that when they first met, appellant said she was scared about the possibility of getting her children back and that those fears triggered the relapse. Rogers further testified that appellant had identified her relapse triggers as being around using people and using places, problems with her husband and the stress of parenting three children. Rogers stated that when appellant was released from the hospital following her July 1996 relapse she arranged for appellant to move into Harbor House, a transitional living facility with a six to nine-month program for recovering women. Appellant entered the Harbor House on July 8, 1996, and discharged herself three weeks later. Rogers stated that appellant later told her she was not comfortable with all of the rules at Harbor House. Rogers was unable to locate appellant for a few weeks but eventually found her living with a female friend. Appellant had moved in with her friend with the intention of making the arrangement permanent. Rogers was concerned about the arrangement because she saw appellant's friend as an enabler and because appellant's contributions to the financial and practical management of the home were irregular. Rogers testified that appellant was not consistent in her contact with her and that she often had a difficult time locating appellant.
Rogers said that appellant indicated she was attending two or three support group meetings each week, while Rogers had suggested that she attend five to seven each week due to her history and relapse signs. Rogers testified that she agreed with the agency plan to pursue permanent custody because appellant had not made consistent adequate progress on her case plan and was not working with the program as well as she could. Rogers did not see appellant as honest but rather as manipulative. Rogers stated that appellant would express concern about her children but that her actions did not follow through. Rogers did not see a concentrated, deep or honest effort to make her treatment program a part of her life.
Rogers testified further that appellant never discussed how her drug or alcohol usage had affected her children. Rogers said that she discussed with appellant the importance of working out specific arrangements with her friend for dealing with the three children coming to live in the home, but that appellant to her knowledge never developed a plan. Rogers felt through her discussions with the two women that appellant was not willing to take on the lead role of parenting and that appellant's friend was not interested in taking on that responsibility. She stated that at the time she was working with appellant, her compliance with her program was superficial and minimal: appellant was not attending the required meetings on a regular basis, was not as open as she could have been in group sessions, did not have a regular ongoing sponsor, and was not showing some basic responsibilities. Rogers testified further that appellant's friend expressed concern twice in October 1996 that appellant had started drinking again.
Barbara Lee testified that she was the therapeutic foster parent for Paul, then eleven years old. Lee stated that Paul was placed in her home, which is more restrictive than a regular foster home, because he was verbally aggressive and had sexually molested his younger brother Joseph in their previous foster home. Lee testified that when Paul came to her home in August 1996, he threatened her and that he had a lot of problems taking directions from a woman. Lee testified that Paul currently did not follow safeguards that had been put into place to help him learn how to keep himself and others safe from his frequent sexual acting out. She stated that when she spoke to appellant about Paul's behavior and safeguards that would need to be put in place for him, appellant seemed in a hurry: "It was, yeah, okay, okay, okay." When they spoke again about this issue and Lee tried to explain some things, the extent of appellant's response was, "Yeah, okay, all right, all right." Lee testified that when the children have visitation with their mother Joseph does not want to be around Paul. She stated that she believes Joseph is afraid of Paul, which she attributed to the earlier molestation. Lee stated that she is concerned that appellant's passive attitude toward Paul could create a problem but said she thought that appellant could learn to handle Paul if she really wanted to.
Debbie Garza testified that she had been Joseph's and Zachary's foster parent, but that Joseph had been removed from her home after about three weeks. She stated that LCCS had decided to separate Joseph and Zachary because Joseph had been hitting his brother, touching him "in his diaper area" and pulling Zachary on top of him between his legs. Garza stated that Zachary, then two and one-half, was recently moved to another foster home because his tantrums and other behavior was starting to affect the other children in her home. She described Zachary as self-destructive and said he does not like to be touched.
Lisa Lawson-King testified that she was the LCCS caseworker currently assigned to appellant's case. As to case plan services offered appellant by the agency, Lawson-King testified that appellant's first goal was to remain drug and alcohol free. She testified that appellant attended a substance abuse program and was making progress but had two relapses. She further testified that appellant had attended eight of ten parenting classes and was in individual counseling until her attendance began to lapse in June 1996. Lawson-King testified that, based on several incidents, she was concerned that appellant had not internalized and learned to apply the information she had been exposed to through her case plan. She stated that she did not think appellant understood all of the information about her children that was being reported to her.
Lawson-King further testified that several weeks earlier the agency had developed a plan to allow for the children to spend most of the day in appellant's home and return to their foster homes at night so that appellant could experience what it would be like to care for all three children together, but that appellant said she could not get the time off work to implement the plan. King testified that when the agency explained the tentative plan appellant felt it was not fair and that they were dumping it on her all at once. Lawson-King stated that she recommends that the agency be given permanent custody of appellant's children because of their special needs. She also stated that she was afraid that if the three children were placed together one of them would be set up to be a victim of sexual abuse. She also was concerned because appellant continued to spend time with her husband, which placed her in an environment of drug abuse, and because appellant's relapses had occurred at times when the agency had been discussing reunifying with the children. She testified further that she was optimistic that with continued therapy and a supportive environment the three children would be adoptable.
Judith Tolliver, a clinical social worker at Harbor Behavioral Health Care, testified that she met with appellant in order to assess her needs in February 1997, when appellant was referred to the center's program for parents of abused children. She testified that appellant reported starting to drink at the age of nineteen and drinking about a case of beer several times a week by the age of twenty. Appellant told her for the past fifteen years she has been drinking heavily several times a week, often binge drinking for an entire day and night. Appellant reported to Tolliver that she had been sober for the past eight months.
Pamela Sue McCoy testified that she and appellant have been living together in McCoy's home since September 1995. McCoy stated that she and appellant had discussed the possibility of the children being returned to appellant's custody. McCoy testified that she assumed she would be responsible for driving the children to various appointments since appellant does not have a driver's license. She stated that she had learned several months ago that the children all have behavioral problems. McCoy testified further that on several occasions she had expressed her concerns about her ability to deal with the children's behavior. She stated that she and appellant had discussed this issue and that it was her understanding that she would be responsible for handling the children if they came into her home, including getting them ready for school, driving them to school, caring for Zachary all day, preparing their meals, picking them up from school and getting them to their therapy appointments. McCoy said she does not know if she is physically and emotionally capable of handling the children on a day-to-day basis and that she has reservations about making such a commitment. McCoy stated that if appellant does not take responsibility for the children she would probably do it.
Teresa Swolsky, appellant's AA sponsor, testified that she had almost daily phone contact with appellant for three months and that appellant always spoke about her children and had told Swolsky she was determined to stay sober this time.
Appellant testified that to the best of her knowledge she has done everything LCCS has asked her to do and more. She stated that if it were necessary she would quit her job to care for her children and that if the arrangement with McCoy did not work out she would get her own apartment. She testified that she has learned enough to cope with her children and their problems and that she is not afraid to have them back in her custody. Appellant stated that she saw her husband a couple of times during the winter to discuss the children.
Laura West, facilitator of the group appellant attends for parents of abused children, testified that appellant had gone to three sessions so far. West stated that she feels optimistic about appellant's chances for successfully completing the program and learning what she needs to know in order to protect her children but that appellant needs professional support and help in moving forward. West testified that she is comfortable in recommending gradual reunification.
Janet Veres testified that she has been involved in this case as the children's guardian ad litem since June 29, 1995. Veres stated that Pam McCoy had told her outside of court that she did not feel she could care for appellant's children and that McCoy had gone to several agency staffings at which she expressed concern about the children being placed in her home. Veres recommended that LCCS be granted permanent custody of the children.
On May 6, 1997, the trial court filed its judgment entry in which it found that LCCS made reasonable efforts to reunite the family; that the children cannot and should not be returned to their parents within a reasonable period of time and that it is in the children's best interest for permanent custody to be granted to LCCS. It is from that judgment that appellant appeals.
Appellant asserts in her sole assignment of error that the evidence did not support the trial court's findings. Appellant argues that the evidence showed that appellant was willing and able to remain sober and that she substantially remedied the situation which caused the children to be removed from the home.
R.C. 2151.414 provides in pertinent part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
"* * *
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 "(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
"(4) The custodial history of the child;
 "(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." [Emphasis added.]
R.C. 2151.414(E) states that the trial court shall consider all relevant evidence in determining whether a child cannot or should not be placed with either parent within a reasonable period of time. It further provides that if the court finds by clear and convincing evidence that one or more of eleven listed conditions, or "[a]ny other factor the court considers relevant," exists as to each of the parents, it shall enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time.
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469.
This court has thoroughly reviewed the record of proceedings in the trial court and, upon consideration thereof, we find that there was clear and convincing evidence to support the lower court's finding that it was in the best interest of Paul, Joseph and Zachary E. to grant permanent custody to the Lucas County Children Services Board. At the hearing on the motion for permanent custody, the trial court heard testimony that all three of appellant's children suffer from behavioral problems; that the children had to be separated and placed in different foster homes because of their behavioral problems and sexual acting out and that placing all three children in the same environment could put them at risk for sexual molestation from one another; that if the children were to live with appellant, she planned for her live-in friend Pamela McCoy to bear the vast majority of the responsibility for caring for the children on a daily basis, and that McCoy was concerned about her ability to handle those demands; and that with continued therapy and a supportive environment the children would be adoptable. Accordingly, this court finds that the trial court did not err by awarding permanent custody of Paul, Joseph and Zachary E. to Lucas County Children Services Board and appellant's sole assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ Melvin L. Resnick, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.
[1] Appellant's husband, Zachary's legal father, has not appealed the trial court's judgment. Paternity of the other two children had not been established at the time of the permanent custody hearing.